**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SUPERIOR GRAPHITE CO., ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No. 03 C 4904 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| TIMCAL SA, TIMCAL AMERICA INC., and ) | |
| TIMCAL CANADA INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Superior Graphite Co. ("Superior") has brought suit against defendants Timcal SA,

Timcal America Inc. and Timcal Canada Inc. (collectively "Timcal"), alleging infringement of its Patent

No. 6,287,694 (the "'694 patent"). For the reasons set forth below, Timcal's motion for summary

judgment of invalidity of all patent claims asserted in this action is denied.

## BACKGROUND

Superior's '694 patent describes a method invented by Peter Zaleski, David Derwin, and

Richard Girkant for producing exfoliated graphite particles possessing low thermal and electrical

resistivity, suitable for use in alkaline dry cell batteries. Briefly, the '694 patent describes a method by

which purified mineral flake or synthetic graphite is intercalated with a graphite intercalation compound

("GIC"), typically a strongly oxidizing acid, that inserts between the lamellae, or layers, of the graphite

structure. Upon rapid heating, the acid GIC expands, forcing the lamellae of the graphite to separate

and expanding the graphite into an accordion-like configuration. The expanded graphite is subsequently

air milled, which further delaminates and separates it, yielding a fine graphite particulate with a greater

surface area than graphite particles milled to the same particulate size but not intercalated and expanded.

When employed in the active material in the positive electrode of an alkaline dry cell battery, the increased surface area to mass ratio of the delaminated graphite particles produced in this manner results in greater conductivity of the electrode, resulting in better performance and extended useful battery life. Superior filed the application for the '694 patent on March 13, 1998.

Superior had a working relationship with Eveready Battery Co. ("Eveready") in 1995 when, Timcal alleges, Superior sent the first samples of expanded graphite produced by the method described in the '694 patent. Timcal alleges that between August 1995 and March 1997, Superior sent Eveready 11 samples of graphite produced by the '694 patent method. Timcal alleges that these samples were sent to Eveready for testing as a conductivity enhancement in alkaline batteries with the aim of obtaining from Eveready a contract for the supply of exfoliated graphite in commercial quantities. Timcal asserts that by sending samples to Eveready for product testing more than two and a half years before filing a patent application, Superior violated 35 U.S.C. §102(b) (2000), which states that an inventor must file an application for a patent within one year of commercially exploiting or publicly disclosing an invention. Timcal claims that Superior's submissions of the samples to Eveready were made in order to obtain business from Eveready and that the samples were provided without limitation, restriction or obligation of confidentiality. As such, Timcal alleges, Superior's providing of samples for evaluation constitutes a public use of the invention prior to the one year grace period established by the "critical date."[1] Timcal has therefore moved for summary judgment of invalidity of all patent claims asserted with respect to the '694 patent.

---

[1] The critical date in the case of the '694 patent is March 13, 1997, one year prior to the date the patent application was submitted.

Superior responds to Timcal's allegations by claiming that an agreement of confidentiality was implicit in the business relationship existing between Superior and Eveready at the time the samples were submitted.[2] Furthermore, Superior claims that it did not arrive at a reproducible method for the air milling step claimed in the '694 patent until after the critical date of March 14, 1997, and that determination that the final bulk volume and surface area to mass ratios claimed in the '694 patent were essential and/or necessary was likewise not made until after the critical date. Superior also asserts that its submission of samples to Eveready before the critical date constituted experimental, rather than public, use of the '694 patent method. According to Superior, such experimental use negates the one year time limit defined by 35 U.S.C. §102(b).

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ. P. 56(c). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact for trial, the court must draw every reasonable inference from the record in the light most favorable to the nonmoving party and should not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 252. Patents are presumed valid, and a party attacking the validity of a patent bears the burden of proving invalidity by clear and convincing evidence of facts which support the existence of a public use bar under §102(b).

---

[2] A written confidentiality agreement between Superior and Eveready was signed in October 1997.

*Manville Sales Corp v. Paramount Systems, Inc.*, 917 F.2d 544, 549 (Fed. Cir. 1990); *EZ Dock v. Schafer Systems, Inc.*, 276 F.3d 1347, 1351 (Fed. Cir. 2002).

The use of an invention is not "public use" as defined under §102(b) if it is substantially or primarily for the purposes of experimentation. *Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249, 257 (1887). The public use bar serves the policies of the patent system by encouraging prompt filing of patent applications after inventions have been completed and publicly used. *Allied Colloids, Inc. v. American Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995). Timcal asserts that Superior's submission of samples to Eveready for testing and potential commercial use prior to the critical date was not for purposes of experimentation, but rather represented an invalidating commercial exploitation of Superior's claimed method under the '694 patent. An invalidating public use arises when an invention is : (i) ready for patenting; and (ii) used by a person, other than the inventor, who is under no limitation, restriction, or obligation of secrecy to the inventor. *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1317 (Fed. Cir. 2004).

**Readiness for patenting**

A device is ready for patenting if it has either been reduced to practice prior to the critical date or if the inventor has prepared drawings or other descriptions sufficient to enable a person skilled in the art to practice the invention. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998). A process is reduced to practice when it is performed. *Corona Co. v. Dovan Corp.*, 276 U.S. 358, 383 (1928). Timcal alleges that since the samples provided to Eveready met all of the limitations of the asserted product claim (Claim 16) of the '694 patent and were produced by the steps of the asserted method claims (Claims 1 and 14) the invention of the method for producing delaminated

4

and exfoliated graphite had been effectively reduced to practice. However, the scope of experimentation also includes testing to bring an invention to perfection or to ascertain whether it would answer the purpose intended. *City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 137 (1877). Superior has asserted, via co-inventor Derwin's testimony, that it did not determine that it had a reproducible method for air milling the exfoliated graphite particles until after the critical date of March 13, 1997.[3] According to Derwin, prior to that date Superior was involved in a program of experimentation to determine which of several types of mill would reproducibly produce particles with the properties described in Claim 16. The type of mill required to reproduce these claimed limitations is specified in the patent claims.[4] Although some quantities of the particles meeting the limitations of Claim 16 were produced prior to the critical period, Superior's assertion that the methods for producing such particles were not reproducible, and that continued experimentation was required to determine which type of air mill would reliably reproduce particles meeting the limitations of the '694 patent claims indicates that the invention had not yet been reduced to practice. Thus there is a dispute between the parties concerning a material fact; a reasonable jury could find that Superior had not yet reduced the invention claimed in the '694 patent to practice.

---

[3] Derwin testified that "[t]here are numerous air mills. Some don't work. Most don't work. The one that is in the patent works for the delamination process." Derwin also testified that it was not until after the critical date that Superior finally determined that it had a reproducible method for air milling exfoliated graphite particles.

[4] Claim 4 of the '694 patent states that ". . . the exfoliated graphite particles are air milled in a fluid energy attrition mill." Claim 5 specifies that the fluid energy attrition mill has a flat configuration.

Timcal also argues that the estimated prices provided by Superior prior to the critical date, and Superior's pre-critical date request for a commercial commitment from Eveready, show that the claims of the '694 patent had been reduced to practice and thus also comprise an invalidating public use of the invention. Under §102(b), an offer for commercial sale by Superior would constitute a public use of the invention claimed in the '694 patent. However, Timcal does not allege that a commercial contract arose between Superior and Eveready prior to the critical date. Rather, Timcal claims that Superior's offer of samples to Eveready in order "to get business" was sufficient public use of the invented process to invalidate the patent. Timcal alleges that documents concerning pricing and potential orders between Eveready and Superior amount to sufficient evidence to demonstrate commercial intent. However, the court in *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 150 (Fed. Cir. 1986) found that customer documents discussing sales and orders, generated in the regular course of business, were insufficient to demonstrate dispositively commercial intent and created a genuine issue of material fact sufficient to defeat a motion for summary judgment. The same is true here.

Timcal cites *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed. Cir. 1983) in support of another of its arguments, that Superior's provision of samples for testing by Eveready constituted commercial use. However, the facts in *Auld* are distinguishable from those in the instant case. In *Auld*, sales representatives carried samples made in the laboratory via a method claimed in a later patent to potential customers, and stated that it would only "tool up" upon receiving a purchase order to justify the expenses of production. 714 F.2d at 1148. Timcal argues that Superior's inquiries into potential purchase of the exfoliated graphite by Eveready were similar expressions of commercial intent. However, it was not Superior's sales representatives who carried

the samples from Superior to Eveready. Rather, Superior maintains that the testing of the exfoliated graphite's potential utility in batteries was conducted as a collaborative experimental testing program between Superior's and Eveready's research and development teams wherein Eveready tested a "matrix" of Superior's various graphite samples. Furthermore, unlike *Auld*, Superior asserts that the samples were not offered for sale to Eveready and no money changed hands during the testing program. Superior also alleges that Eveready provided its test data to Superior and that teams from both companies met regularly to review the test data. If true, these facts would be adequate to prevent *Auld* from controlling in this case.

In addition, the Federal Circuit's holding in *Grain Processing Corp. v. American Maize-Products*, 840 F.2d 902 (Fed. Cir. 1988), supports Superior's contention that the submission of its exfoliated graphite samples for testing was experimental. In that case, small samples of starch hydrolysates were provided, free of charge, by the inventor for testing of their utility as food additives over short periods of time. 840 F.2d at 906. The court found that because there was nothing in the inventor's conduct that was "inconsistent with experimentation," there had been no public use. Likewise, in the instant case, Superior asserts that it was following industry custom by testing the exfoliated graphite samples. Although the testing period extended to prior to the critical date, Superior asserts that the length of the testing period was customary and that it was still experimenting to perfect the method claimed in the '694 patent prior to the critical date. Furthermore, Superior's involvement in Eveready's testing of the graphite samples, meeting regularly with Eveready to review the data and results and keeping records, supports Superior's contention that it was involved in, and maintained a degree of supervision and control over, the testing of its samples. *Armco*, 791 F.2d at 150; *TP Laboratories v. Professional Positioners, Inc.*,

7

724 F.2d 965, 971-72. Again, Superior has placed enough facts at issue to prevent a grant of summary judgment to Timcal.

Whether Superior's interactions with Eveready amounted to commercial use or whether the program was in fact merely an experimental program are genuine issues of fact determinable at trial. Timcal's motion for summary judgment fails.

**Limitation, restriction or obligation of secrecy by a third party**

The second prong of the invalidating public use test is if the invention was used by a person, other than the inventor, who is under no limitation, restriction, or obligation of secrecy to the inventor. *Netscape*, 295 F.3d at 1320. As described above, Superior provided the exfoliated graphite samples to Eveready for the limited and specific purpose of testing, a program in which Superior actively participated. Timcal alleges that Superior imposed no obligation of secrecy or confidentiality upon Eveready prior to the critical date and that therefore the testing by Eveready of Superior's samples for utility in batteries constituted a public use under §102(b). *Netscape*, 295 F.3d at 1320. Timcal further alleges that Eveready's actions in sharing test results of Superior's products with Timcal demonstrates that Eveready did not feel itself to be bound by any implicit agreement of confidentiality with Superior. Superior counters by alleging that when it submitted the exfoliated graphite samples to Eveready, it was in the context of an established business relationship and that Eveready understood that the samples were submitted on a confidential basis. Superior further claims that although Eveready did share test results with Timcal, it did not disclose any of the unique features of Superior's product with Timcal, reflecting an understanding on Eveready's part of the confidential nature of the samples.

The presence or absence of a written confidentiality agreement is generally not dispositive of public use. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1266 (Fed. Cir. 1986). Superior's contention that there was an understanding with Eveready of confidentiality concerning the specific characteristics of the exfoliated graphite particles and that this understanding was a part of the direct relationship between the two companies creates a genuine issue of material fact that a jury must resolve. *Armco*, 791 F.2d at 150.

## Conclusion

Because genuine issues of material fact exist concerning whether Superior's use of its exfoliated graphite violated the public use bar of 35 U.S.C. §102(b), Timcal's motion for summary judgment of invalidity of all patent claims asserted in this action is denied.

ENTER:

_____/s/_____

Joan B. Gottschall
United States District Judge

Dated: August 22, 2005