# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUPERIOR GRAPHITE CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 4904 |
| vs. ) | Judge Gottschall |
| ) | Magistrate Judge Schenkier |
| TIMCAL SA, TIMCAL AMERICA INC., ) | |
| and TIMCAL CANADA INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

The defendants, Timcal SA, Timcal America Inc., and Timcal Canada, Inc., have filed a motion to declassify certain documents and testimony ("Identified Information") produced by plaintiff, Superior Graphite Co., in this litigation.[2] The Identified Information is subject to a protective order, entered by the district court and agreed to by the parties (Timcal Ex. C). Timcal seeks to use the Identified Information in an opposition proceeding in the European Patent Office ("EPO"), in which Timcal is challenging the validity of a European patent granted by the EPO to Superior. For the reasons given below, the Court grants in part and denies in part Timcal's motion (doc. # 83).

---

[1] By an order dated December 2, 2005 (doc. # 128), the Executive Committee reassigned the referral by Judge Gottschall to Magistrate Judge Levin to this Court for a ruling on Timcal's motion to declassify (doc. #83). Judge Gottschall, similarly, entered an order on December 7, 2005 (doc. # 123), indicating that her referrals are now directed to this Court, including the present motion.

[2] We note that the motion and briefs, as well as the underlying exhibits, have all been filed under seal pursuant to the Protective Order. That said, Timcal identified the documents and testimony it wants declassified in correspondence to Superior, dated June 30, 2005 (Timcal's Ex. A); and, the parties have outlined the relevant statements and arguments in their respective exhibits (Timcal's Mem., Ex. E; Superior's Opp. Mem., Ex. 11; Timcal's Reply, Ex. P). We use the term "Identified Information" in this opinion to refer to the statements within the spreadsheets, Exhibit P, and the underlying materials from which those statements were extracted. Because this information is subject to the Protective Order, the Court will be circumspect in its reference to these materials.

## I.

Paragraph 6 of the Protective Order states:

> CONFIDENTIAL OR CONFIDENTIAL - COUNSEL ONLY information and the substance and content thereof, including any notes, memoranda or other similar documents relating thereto, **shall be used by a receiving party solely for the purpose of this action** and any appeals therefrom, and shall not be made available or disclosed to any persons other than those specified in paragraphs 3 and 4 (emphasis added).

(Timcal's Mem. Ex. C, ¶ 6) (emphasis added). In addition, Paragraph 17 of the Protective Order provides that any party may apply to the Court for relief from the Protective order or modification of it (*Id.*, ¶ 17).

In moving for declassification, Timcal does not dispute that Superior has properly designated the Identified Information as confidential under the terms of the Protective Order (Timcal Reply Mem., at 2). Rather, Timcal expressly seeks relief "based on this Court's equitable power to modify the Protective Order to allow disclosure of certain materials to prevent a potential fraud" on the EPO (*Id.*).

The modification of a protective order is governed by Federal Rule of Civil Procedure 26(c), which requires the party seeking modifications – here, Timcal – to bear the burden of showing good cause. *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 333 (M.D.N.C. 1999). *See also Alexander v. F.B.I.*, 186 F.R.D. 99, 100 (D.D.C. 1998) (modification of a protective order requires a showing of good cause). The Seventh Circuit has framed the showing of good cause as one of "substantial need" for the disclosure. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 566 (7th Cir. 1984). The Second Circuit has indicated that there is "a strong presumption against . . . modification of a

protective order" to protect the interests underlying Rule 26(c). *See SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).

Good cause implies changed circumstances or new situations. *See Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 464 (S.D.N.Y. 1995) (weighing the defendant's need for modification to permit in-house counsel to attend depositions against the plaintiff's need for protection). In deciding whether good cause has been shown, courts balance the need and interests of the moving party to declassify and/or disclose the information sought against the harm to the party seeking to keep the information confidential and subject to the existing protective order. *See In re Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1313 (7th Cir. 1984). A court may assess a number of factors when determining whether a protective order should be modified or vacated, such as: (1) the nature of the protective order, (2) the foreseeability of the modification requested, (3) the parties' reliance on the protective order, and (4) the presence of good cause for modifying or vacating the order. *See Flatow v. The Islamic Republic of Iran*, 196 F.R.D. 203, 206 n.1 (D.D.C. 2000), *vacated on other grounds*, 305 F.3d 1249 (2d Cir. 2002). The Court has wide discretion in ruling on a motion to modify a protective order. *The Street.com*, 273 F.3d at 229.

## II.

Having reviewed the materials submitted by the parties relevant to this motion under the applicable standards, the Court finds that the balance of interests in disclosure versus confidentiality of the Identified Information weighs in favor of Superior as to most, but not all, the Identified Information. Our reasons follow.

Timcal's asserted need for declassification/disclosure is straightforward: to establish certain technical facts to prove that Superior has been less than candid and has made material

3

misrepresentations concerning its European patent application to the EPO (Timcal's Reply Mem., at 6). Timcal asserts that, if the Court does not release the Identified Information, then "any independent proof that Timcal may provide would not accomplish the goal of exposing Superior's misrepresentations to the EPO" (Timcal's Reply Mem., at 3). Stated differently, Timcal asserts that it "cannot independently obtain all of the technical information it needs to rebut Superior's misstatements" (Timcal's Reply Mem., at 6). Balanced against this asserted need is Superior's concern that any disclosure of the Identified Information to the EPO would render the information public, because the opposition proceeding in the EPO is a public one – which Timcal does not deny. Thus, Superior says, disclosure "would give [Superior's] competitors the free benefit of this information to the competitive detriment of Superior" (Superior's Opp. Mem., at 5) (*citing* Superior's Ex. 1, Booth Decl. ¶ 11). Superior also makes clear that it relied on the Protective Order in deciding to produce the Identified Information to Timcal and that without it the Information would not have been produced (Superior's Mem., at 13).

Timcal identifies four categories of statements made by Superior which it contends are inconsistent with the positions Superior took in the EPO with respect to its pending European patent application. These categories relate to (1) mean particle size; (2) further delamination; (3) air milled samples; and (4) disclosure to Eveready. We have carefully reviewed the Identified Information, Timcal's explanation of the asserted inconsistencies, and Superior's response. Timcal, carries the burden of showing substantial need and must show at the threshold that the Identified Information is inconsistent with the position Superior took in the EPO. Without an inconsistency, there is no "need" – as Timcal frames it – to declassify the Identified Information and give it to the EPO. Because the statements and underlying materials are subject to the Protective Order, our analysis

4

here is necessarily general rather than specific. It would be a pyrrhic victory for Superior if, in the course of ruling that its confidential information should not be disclosed, we were to make that very information public. However, we can say that with respect to the categories identified as mean particle size, further delamination, and disclosure to Eveready, the Court finds that what Timcal labels as inconsistencies are at most semantic differences that do not raise the questions of fraud and/or lack of candor suggested by Timcal.

Timcal brushes aside Superior's explanations of the alleged inconsistencies (and, asks the Court to do so), submitting that "this is not the proper forum for determining whether Superior's European patent is valid under European patent law" (Timcal's Reply Mem., at 5). However, our task here is not to assess patent validity, but to decide whether Timcal has shown inconsistencies that persuade the Court there is a need to provide the Identified Information to the EPO, in contravention of the Protective Order that limits use of confidential information to this proceeding. We find that, as to the three categories identified above, Timcal has failed to do so.

Therefore, on balance, Timcal's showing of need related to these alleged statements is either nil or very minimal. Conversely, Superior's alleged harm to its competitive business interests is potentially great. On this point, Superior has provided the unrebutted affidavit of Mr. Peter R. Booth (Superior's Ex. 1), who states that such a harm is likely if the Identified Information is released in the public EPO proceeding. Thus, as to the Identified Information concerning mean particle size, further delamination, and disclosure to Eveready, the balance tips in favor of Superior. The Court denies Timcal's motion to declassify the statements identified in these three categories.

We reach a different conclusion as to the category of statements demarcated as "air milled samples." Here, the position taken by Superior in the EPO opposition proceeding appears to directly

contradict the deposition testimony given in this case by Steven Heller, Superior's patent attorney (Timcal's Ex. M, at 227:18-228:12), who "prepared Superior's patent disclosure" in the EPO and who is knowledgeable about Superior's research and development (Timcal's Ex. P, at 2, n.1). Having reviewed Mr. Heller's deposition testimony and compared it with the position take by Superior in its opposition paper to the EPO (written by a European patent attorney) (see Timcal's Ex. D, at 7), the Court finds that Timcal has satisfied the threshold question of inconsistency.

Indeed, Superior does not argue in its papers that the statements are not inconsistent. Rather, Superior asserts that Mr. Heller's testimony is irrelevant to the EPO proceedings (Superior's Ex. 11, at 9, Col. 3). However, is for the EPO to decide relevancy, not Superior. In any event, because the Identified Information concerning air milled samples is inconsistent with what Superior told the EPO on that subject, it is hard to see how that information would not be relevant to the EPO.

Moreover, we are persuaded that Superior cannot obtain this information for use in the EPO proceeding in any other way. For example, the EPO would not know to ask for or order such testimony to be produced (either in the opposition proceeding or in subsequent litigation) without knowing first that it existed. And, the EPO would not have such knowledge unless Timcal were permitted to disclose its existence.

We also find that any adverse affect disclosure of this information would have on Superior's competitive interests is marginal at best. Nowhere does Superior argue or even state that the excerpt of deposition testimony by Mr. Heller directly reflects or reveals a trade secret or any other kind of confidential business information that if released to the public would cause its company competitive harm. Thus, although there is no dispute that the Identified Information is properly classified as confidential, the Court finds that, on balance, Timcal's need for the Identified Information

concerning air milled samples outweighs Superior's interest in confidentiality. Thus, we find that Timcal has shown good cause to modify the Protective Order solely for purposes of allowing Timcal to provide that information to the EPO in the opposition proceeding.

## CONCLUSION

Therefore, for the reasons stated above, the Court grants Timcal's motion with respect to the Heller deposition testimony regarding air milled samples (Timcal's Ex. M, at 227:18-228:12), and denies Timcal's motion to declassify as to the other Identified Information (Timcal's Ex. A, 06/30/05 Letter) (doc. #83).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: January 9, 2006**